Diana I. ANDERSON, Plaintiff,

v.

Carolyn COLVIN, Acting
Commissioner of Social
Security, Defendant.

Civil Action No. 15–cv–1378–JLK

United States District Court,
D. Colorado.

Signed December 1, 2016

Frederick W. Newall, Attorney at Law, Colorado Springs, CO, for Plaintiff.

David I. Blower, Social Security Administration, J. Benedict Garcia, U.S. Attorney's Office, Denver, CO, for Defendant.

## MEMORANDUM DECISION ON APPEAL

Kane, District Judge.

*Anything lost can be found again, except for time wasted.* Sam—*Fresh* (1994).

The time wasted on the issue presented by this social security income appeal is an outrage. It is a tragedy of incompetence and disinterest. Misplaced and incomplete administrative records. Incompetent counsel. Defiant ALJs. I am beyond words. Plaintiff Diana Anderson is 58 years old. With the exception of a seven-year period spanning from September 20, 2002 to March 22, 2009, the Social Security Administration has recognized her as incapable of working since the age of 20, in 1978. She has never been gainfully employed.

The question on appeal is whether the SSA erred when it terminated Ms. Anderson's SSI benefits in 2002, just before her 43[d] birthday, based on a determination that her medical impairments had improved to the point that she could work as a "street sweeper, photo copy machine operator and video rental clerk." *See* Decision of Administrative Law Judge Richard Maddigan, dated 11/4/2004 (R. 390)(the final decision of the Commissioner). As absurd as that finding was in 2004 when ALJ Maddigan made it, it stopped making sense at all in 2009, when the SSA granted a subsequent disability application of Ms. Anderson's and restarted her SSI payments. In the meantime, Ms. Anderson's appeal of the 2004 decision took on a life of its own, wending its way through the administrative appeals process to this court, the Tenth Circuit, SSA's Appeals Council,

back here twice more in a series of written decisions, remands, and evidentiary hearings that span a 1055 page record. All told, Ms. Anderson's 2002–2009 period of theoretical employability has been the subject of at least four evidentiary hearings and nearly 100 pages of written decisions.

Judge Matsch, writing in 2010, reversed ALJ Maddigan's 2004 decision (as well as a 2006 decision by ALJ Peggy Sue Ball denying a subsequent disability application of Ms. Anderson's), finding the 2002 termination of benefits for medical improvement "not supported by the evidence" and the result of "both procedural and factual error." *See* 2/1/2010 Order Vacating Judgment and Reversion Decisions Denying Applications for Supplemental Security Income (R. 683–686). "What is revealed by examination of the complete record," Judge Matsch wrote in 2010, "is that after recognizing this woman's disability from age 20 to age 43, the SSA terminated her benefits on September 30, 2002, based on medical improvements which are not shown in the record, and that [this] termination was approved by an ALJ after what can only be considered a perfunctory hearing." (R. 685.) Apparently unaware, at the time of his writing, that the SSA had already ruled in favor of Ms. Anderson on yet another disability application, Judge Matsch remanded the case to the Commissioner for a "new and compete review of Ms. Anderson's condition." (R. 686.) "It is difficult to understand," he concluded, "how a woman who has never been able to obtain substantial gainful employment can now be considered to have the capacity to perform the jobs that these ALJs considered." (*Id.*) Well, in fact, the Commissioner no longer considered Ms. Anderson capable of working at the time. The only thing that was remanded for "new and complete" consideration, then, was whether Ms. Anderson had *obtained* the capacity to

work eight years earlier, which capacity she had, since, somehow "lost" again.

Undeterred by the fatuousness of the exercise, ALJ Ball conducted an evidentiary hearing in 2012 to assess Ms. Anderson's ability to work some ten years before, resulting in an 18–page written decision "finding" that Ms. Anderson was not disabled from September 30, 2002, to March 22, 2009, but that she was disabled from March 23, 2009 forward. *See* 4/26/13 Decision Pursuant to District Court Remand (R. 656–74). Ms. Anderson appealed this decision back to the district court, but before briefing was completed, the Commissioner moved for voluntary remand, stating she had "further reviewed" the case and "determined" the case was appropriate for supplemental proceedings related to the September 20, 2002 to March 22, 2009 time period. (R. 914–16, 911.) On remand, the Appeals Council acknowledged "conflicting findings" in ALJ Ball's 2013 decision, and directed Ms. Anderson's 2002—2009 disability determination be heard by a different ALJ who should "give further consideration to the treating and non-treating source opinions" under the appropriate regulatory standards and Social Security Rulings, "provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," and obtain additional vocational expert testimony clarifying the "effect of the assessed limitations on the claimant's occupational base." (R. 901–906.) The Appeals Council's directive was dated April 15, 2014—twelve years after Ms. Anderson's sudden "workplace-lucidity" arose, and more than five years after she had again been found incapable of working. (R. 906.)

This brings us to the decision currently on appeal: ALJ William Musseman's March 2, 2015, 40–page opus finding that Ms. Anderson 's long-term impairments

had improved sufficiently between September 20, 2002 to March 22, 2009 as to have rendered her capable of work in the national economy for that time period, and that time only. At the time, Ms. Anderson was 56 years old. She had been on SSI benefits for all but seven of the previous 36 years ...

I will not pore over ALJ Musseman's parsing of Ms. Anderson's testimony related to her 43-year-old self, or his findings related to how much weight she could lift or how long she could stand, kneel, or bend over from 2002 to 2009. (R. 890–95.) I scarcely comment on his contrived use of the present tense to determine whether "a successful adjustment to other work can be made," or the "extent of erosion of the unskilled light occupational base caused by [Ms. Anderson's] limitations, pursuant to the remand order." (R. 897.) Such an exercise, thirteen years after the fact and given that Anderson had never worked and had been recognized as disabled for all but seven of the previous 36 years, is ludicrous. Nor will I dwell on ALJ Musseman's repeated references to the findings of ALJs Maddigan and Ball, which findings had been reversed and set aside by my colleague, Judge Matsch, five years before. (R. 873, 894.) It is my inescapable conclusion based on a thorough review of this 1055–page record that ALJ Musseman took some sort of perverse pleasure in conducting his review to the letter—and only the letter—of the Appeals Council's remand directives. His interrogatories sent to the vocational expert "pursuant to the remand order" included hypotheticals incorporating the assessments of an agency expert, ALJ Maddigan, ALJ Ball, and Ms. Anderson's longtime treating physician Dr. Higgins. (R. 895.) In all cases, "except for

Dr. Higgins," the vocational expert "found the claimant could [back in 2002] perform work in sufficient numbers in the national sector." (*Id.*) The ALJ discounted Dr. Higgins's findings, even though he was Ms. Anderson's treating physician for over 30 years (R. 825) and consistently opined that her combined medical and mental impairments rendered her unable to work.

The ALJ tore down each of Dr. Higgins's medical opinions, finding "insufficient medical evidence to establish" any of them. (R. 877–883—no seizure disorder, no arthritis, no fibromyalgia, no history of borderline disorder.) The ALJ's evaluation of Dr. Higgins's medical source opinions was harsh, finding the primary care physician "just offers diagnoses in his notes without any type of substantiation, either objective evidence or clinical findings." (R. 878.) The ALJ, for example, found no basis for Dr. Higgins "repeated assessments of a seizure disorder," noting Dr. Higgins never referred Ms. Anderson for further evaluation and citing the overall tenor of his treatment notes indicating Ms. Anderson was doing well. (R. 874.) He acknowledges Ms. Anderson had inter-cranial brain surgery in 1980 to remove a tumor (R. 876, 1050–54) and that she had suffered from dizziness and spells of vertigo ever since.

I have written repeatedly in recent weeks on the value of long term primary treatment providers and reasons why those providers must be assessed with an eye to the stability they provide patients like Ms. Anderson. *See* slip op. Civil Action No. 16–cv–614–JLK, issued 10/21/16, CM/ECF Doc. 28 (Fleming v. Colvin); slip op., Civil Action No. 15–cv–1527–JLK, issued 11/23/16, CM/ECF Doc. 31 (Garcia v. Colvin).[1] It is clear from the record that Ms. Anderson was dependent on Dr. Higgins,

1. I note both of these decisions have been recommended for publication in the Fed. Supp. 3d.

calling him when she was depressed or "suicidal" and that he "would talk to her and help her get through the day." (R. 879.) The fact Ms. Anderson functioned well under his care is not a proper (nor moral) reason to discount his opinions and certainly a dubious basis for terminating her disability payments.

It is hard to come away from the ALJ's extravagant and exhaustive takedown of Ms. Anderson's functional limitations according to the doctor who knew her best without wondering why such pains were taken. The SSA had recognized Ms. Anderson as disabled from 1978 to 2002, had subjected her to a continuing disability review in 1996 that confirmed her disability, and had found, in 2009, that she was again incapable of gainful employment. The insistence, in 2015, that such a person had gained the capacity a dozen years before and was able, for a brief period of time long since gone, to perform full time work as a "small product assembler," "cafeteria attendant," or "cashier II" (R. 897) simply flies in the face of the reality and the agency's own 2009 determinations to the contrary. All of the effort expended engaging in a fictional analysis of facts long past and no longer apt—why do it? The *post facto* reasons the ALJ gave to support a finding of non-disability in 2002 would seem to apply equally in 2009, except, perhaps, Ms. Anderson's then-advancing age. In any event, the consternation Judge Matsch expressed in 2010 is only amplified now, six years later, and I paraphrase it here to conclude:

It is difficult to understand how the SSA, having repeatedly recognized a woman as incapable of substantial gainful employment for the entirety of her working life—from the age of 20 on—has spent more than a decade insisting that she suddenly gained the capacity back in 2002, at the age of 43, while conceding she "lost" it

again seven years later. The herculean effort expended by ALJ Musseman in writing a 40–page, single-space typewritten decision, peering back over a dozen years after the fact, to reaffirm that point is even more confounding. There is no purpose to be served in 2016 to remand the case for proper consideration of Dr. Higgins's opinions or to reassess Ms. Anderson's 12–year old hypothetical "vocational baseline." Ms. Anderson is 58 years old, has never worked, and has been declared incapable of working anymore for the remainder of her work-age life. A remand after the Kafkaesque proceedings revealed by this record would be manifestly unjust.

I remain outraged:

For I am involved in mankind.

Therefore, send not to know

For whom the bell tolls,

It tolls for thee.

John Donne, Meditation 17 (1624)

Devotions upon Emergent Occasions

I REVERSE ALJ Musseman's March 2, 2015 decision and ORDER an IMMEDIATE award of SSI benefits to Ms. Anderson for the period of time commencing September 20, 2002, to March 22, 2009.